```
 1                 IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF TEXAS
 2                          HOUSTON DIVISION

 3
     UNITED STATES OF AMERICA        )
 4                                   )
     v.                              )     NO. H-17-CR-514-3
 5                                   )
     CESAR DAVID RINCON-GODOY        )     April 19, 2018
 6

 7
                              REARRAIGNMENT
 8             BEFORE THE HONORABLE KENNETH M. HOYT

 9

10

11   For the Government:        John Pearson, AUSA
                                U. S. Attorney's Office
12                              1000 Louisiana, Suite 2300
                                Houston, TX 77002
13
                                Jeremy R. Sanders
14                              Sarah E. Edwards
                                U.S. Department of Justice
15                              Criminal Division, Fraud Section
                                1400 New York Avenue, NW
16                              Washington, DC  20005

17   For the Defendant:         Fred A. Schwartz
                                Kopelowitz Ostrow Ferguson
18                                Weiselberg Gilbert
                                200 East Palmetto Park Road
19                              Suite 103
                                Boca Raton, FL  33432
20
                                George T. Yoss
21                              Kopelowitz Ostrow Ferguson
                                  Weiselberg Gilbert
22                              2800 Ponce de Leon Blvd
                                Suite 1100
23                              Coral Gables, FL 33134

24   Court Interpreter:         Ana Maria Paredes

25   Court Reporter:            Bruce Slavin, RPR, CMR
```

 1          THE COURT:  Good morning, ladies and gentlemen.

 2               I believe we have on our docket this morning a

 3     plea to be entered by the defendant in the case.  Let me

 4     announce it.  The United States of America v. Cesar David

08:59  5     Rincon-Godoy.

 6               Who is representing the United States in this

 7     matter?

 8          MR. PEARSON:  Good morning, Your Honor.  John

 9     Pearson on behalf of the United States.  And with me this

09:00 10     morning are Jeremy Sanders and Sarah Edwards from the Fraud

11     Section of the Criminal Division.  And, as I spoke with your

12     case manager, Mr. Johnson was called away this morning and

13     he sends his best wishes as well.

14          THE COURT:  And you are John Pearson, I believe you

09:00 15     said.

16          MR. PEARSON:  Yes.

17          THE COURT:  Will you be taking or, at least,

18     included in this colloquy or plea that's being given?

19          MR. PEARSON:  Absolutely, Your Honor.

09:00 20          THE COURT:  All right.  Very good.  Thank you.

21               Representing Mr. Rincon-Godoy.

22          MR. SCHWARTZ:  Good morning, Your Honor.  Fred

23     Schwartz representing Mr. Rincon-Godoy.  With me is George

24     Yoss who is also representing the Defendant.

09:00 25          THE COURT:  Thank you, sir.  And your client is

1    present, I gather.  Yes.

2            MR. SCHWARTZ:  He is, Your Honor.

3            THE DEFENDANT:  Good morning.

4            THE COURT:  Are you AUSA or Department of Justice?

09:01   5    Mr. Pearson.

6            MR. SANDERS:  Jeremy Sanders with the Department of

7    Justice, Your Honor.

8            THE COURT:  You're going to be doing the plea?

9            MR. SANDERS:  Yes, Your Honor.

09:01   10           THE COURT:  Okay.  Very good.

11           MR. PEARSON:  And, Judge, I'll be here in case you

12   have any questions.

13           THE COURT:  No problem.  That was my question.  I

14   thought maybe you were going to be doing the presentation.

09:01   15   But thank you very much.

16               Mr. Sanders, we'll proceed with this --

17               Good morning, sir.

18           THE DEFENDANT:  Good morning, sir.

19           THE COURT:  What is your name?

09:01   20           THE DEFENDANT:  Cesar David Rincon-Godoy.

21           THE COURT:  Mr. Rincon-Godoy, it's my understanding

22   that you are entering a plea of "guilty" to a charge

23   pursuant to a plea agreement.  That charge, as I understand

24   it, is -- let me see if I have got it here -- conspiracy to

09:01   25   commit money laundering in violation of federal law.  Is

1    that correct?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  I need to have you to raise at this

4    time your right hand and take an oath.

09:02    5              CASE MANAGER:  Do you solemnly swear the testimony

6    you give in the case will be the truth, the whole truth and

7    nothing but the truth; so, help you God?

8              THE DEFENDANT:  Yes.  I swear to tell the whole

9    truth.

09:02   10              THE COURT:  You may lower your hand, sir.

11              You have stated to me that your name is Cesar

12    David Rincon-Godoy.  Is that true, sir?

13              THE DEFENDANT:  Yes, sir.

14              THE COURT:  You understand that you have taken an

09:02   15    oath to give truthful answers to the questions that are

16    being asked.  Failing to give truthful answers or misleading

17    the Court in some way intentionally could certainly result

18    in an increase in punishment in this case for obstruction of

19    justice, or it could result in a separate indictment if the

09:03   20    federal government determines the infraction to be

21    sufficiently serious.

22              Do you understand those are the conditions

23    under which you're testifying?

24              THE DEFENDANT:  Yes, sir.  I understand.  I am

09:03   25    conscious about that.

1          THE COURT:  Thank you, sir.

2              How old are you?

3          THE DEFENDANT:  I am currently 50.

4          THE COURT:  And how far did you go in school?

09:03    5          THE DEFENDANT:  I finished my schooling.

6     Currently, I have a Ph.D.

7          THE COURT:  And was that in your native country or

8     in the United States or otherwise?

9          THE DEFENDANT:  My elementary and secondary

09:04   10     education was done in my country.  The degree in psychology

11     was done in Poland and my master's and Ph.D. in Spain.

12          THE COURT:  Thank you, sir.

13              Have you been treated for drug addiction or

14     alcohol dependency?

09:04   15          THE DEFENDANT:  No.  Never.

16          THE COURT:  Have you been treated for mental

17     illness?

18          THE DEFENDANT:  No.

19          THE COURT:  Are you taking any medication today?

09:04   20          THE DEFENDANT:  For high blood pressure.

21          THE COURT:  All right.  And I take it that, if my

22     understanding of high blood pressure medication is correct,

23     that that would not affect or impact your ability to

24     understand the questions that I am asking or the answers

09:04   25     that you might give.  Correct?

1       THE DEFENDANT:  It wouldn't at all.

2       THE COURT:  You're represented by counsel this

3   morning; are you not?

4       THE DEFENDANT:  Yes.  My attorneys are here.

09:05   5       THE COURT:  And are these attorneys that you

6   employed to represent you?

7       THE DEFENDANT:  Yes, through my family.

8       THE COURT:  Certainly.  Are you satisfied with the

9   representation that they are providing for you in this case?

09:05   10      THE DEFENDANT:  Yes, sir.

11      THE COURT:  And my question is a little bit broader

12   than that.  It is whether or not you have any complaints or

13   concerns about their work that you need to bring to my

14   attention before I receive your plea of "guilty".

09:05   15      THE DEFENDANT:  No.  I think they have been very

16   honest and hard-working with me, and I am proud of the work

17   that I and they did together to get to the point where I

18   have been able to accept my responsibility.

19      THE COURT:  Very good.  Thank you, sir.

09:06   20          Mr. Schwartz, are you speaking in behalf of

21   the client this morning?

22      MR. SCHWARTZ:  Yes, I am, Your Honor.

23      THE COURT:  All right.  And just verification.

24   Certainly, you would not have submitted your client for a

09:06   25   plea if you did need believe it would be mentally competent,

1   but I need that from you.

2          MR. SCHWARTZ:  He's very intelligent.  He's

3   mentally competent.  And I have seen no evidence at all of

4   any mental illness or drugs.

09:06    5          THE COURT:  Very good.

6                The charge against you, Mr. Rincon, is

7   conspiracy to commit money laundering in violation of

8   Title 18, United States Code, Section 1956(h), of the

9   federal statutes.  Do you understand that to be the charge

09:07   10   for which you're entering a plea of "guilty"?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  You're a citizen of -- is it Venezuela?

13          THE DEFENDANT:  Yes.  I was born in Venezuela.

14          THE COURT:  All right.  And I take it that you have

09:07   15   not that -- you're not also -- some countries permit this --

16   you're not also a citizen of the United States.

17          THE DEFENDANT:  No, I am not a U.S. citizen.

18          THE COURT:  Nevertheless, do you understand that

19   the federal constitution of the United States provides that

09:07   20   any person charged with a criminal offense, particularly a

21   serious offense as this is, have all the rights and

22   privileges of a citizen when it comes to a trial, a criminal

23   trial?  Do you understand that?

24          THE DEFENDANT:  Yes, I understand.

09:07   25          THE COURT:  And that -- and those rights arise

1    under our federal constitution under the Fourth, Fifth and

2    Sixth Amendments.  So, let me just generally go through

3    those.  These are matters that may or may not have been

4    discussed with you in the way that I will state them, but

09:08   5    they've certainly been addressed in some respect.

6            The Fourth Amendment is your right to be free

7    from unreasonable searches or seizures of documents and

8    yourself, papers or possessions, and to have the government

9    proceed to trial in an expeditious manner.  Now, that's part

09:08   10   of what your rights are under the Fourth Amendment.

11   Certainly and also, it includes your right to be free from

12   unwarranted prosecutions by the government or misconduct by

13   law enforcement.  All that's under the Fourth Amendment.

14           Do you understand that when you enter a plea

09:08   15   of "guilty" you will be waiving your right to have any claim

16   of any impropriety by the government or any other personal

17   or property rights that you might have?

18           THE DEFENDANT:  Yes, I understand, Your Honor.

19           THE COURT:  And is that what you want to do, waive

09:09   20   your rights under the Fourth Amendment?

21           THE DEFENDANT:  By pleading "guilty" I understand I

22   waive those rights.

23           THE COURT:  Now, you also have the right to remain

24   silent under the Fifth Amendment.

09:09   25           Do you understand that when you enter a plea

1   of "guilty" you will be confessing to the charge in the

2   indictment itself and, generally speaking -- I believe there

3   is a plea agreement being entered -- you're confessing to

4   the factual statements set forth in that plea agreement.

09:09   5   Understand?

6          THE DEFENDANT:  Yes.  As a matter of fact, the

7   government attorneys have been very clear, as have been my

8   attorneys, and I was aware what I signed when I signed it

9   and that's why I did it.

09:10   10         THE COURT:  So, you understand that you will be

11   waiving your Fifth Amendment right.  Is that what you are

12   intending to do here?

13         THE DEFENDANT:  Yes.

14         THE COURT:  And the Sixth Amendment is your right

09:10   15   to trial by jury -- that is, to have twelve citizens of the

16   United States listen to the testimony and case presented by

17   the United States government against you and determine

18   whether or not the government has proved each of the

19   elements of the crime charged beyond a reasonable doubt.

09:10   20   That's the evidentiary test, beyond a reasonable doubt.

21   Failing to prove the case in that respect, the government --

22   the jury and/or the Court would be dismissing the case

23   against you.

24          Do you understand that by entering a plea of

09:11   25   "guilty" you're waiving your right to a trial by jury,

1   you're waiving your right to have the government present

2   evidence beyond a reasonable doubt, and you, in fact, are

3   confessing to the elements of the crime charged?

4          THE DEFENDANT:  Yes, Your Honor.

09:11   5          THE COURT:  Has anyone threatened you in any way to

6   cause you to enter this plea of "guilty"?

7          THE DEFENDANT:  No, sir.  No one.

8          THE COURT:  And that would include your lawyers.

9   They have not threatened or told you that you're going to

09:11   10  receive some special treatment if you enter a plea of

11  "guilty" one way or the other, have they?

12         THE DEFENDANT:  No, Your Honor.  Other than what's

13  stated on the agreement, they have not said anything else.

14         THE COURT:  And that was my next point.  That is,

09:11   15  that whatever is in that agreement constitutes the entirety

16  of any arrangement you might have or that your lawyers might

17  have worked out for you with the government.  Correct?

18         THE DEFENDANT:  Yes.

19         THE COURT:  All right.  There's no federal

09:12   20  government, Venezuelan government, arrangement being made in

21  this situation where you would be released or somehow

22  dismissed even though you're entering a plea of "guilty".

23  There is no governmental interaction between the two

24  governments, as far as you know.  Correct?

09:12   25         THE DEFENDANT:  No, Your Honor.  I don't believe

1    the government of Venezuela is entering into any

2    negotiation.

3            THE COURT:  All right.  It's just a check.

4            THE DEFENDANT:  Thank you, sir.

09:12    5            THE COURT:  Here's what the government needs to

6    prove in order to establish its case against you:

7                    First, that there was an agreement between two

8    or more persons to commit money laundering; second, that you

9    joined in the agreement knowing its purpose, and you joined

09:13   10    in it with the intent to further the illegal purpose.

11                    Those are the elements of the offense.  Do you

12    understand that?

13            THE DEFENDANT:  Yes, sir, I do understand.

14            THE COURT:  The statutory penalty associated with

09:13   15    this offense is a term of confinement up to 20 years'

16    imprisonment and/or a fine of $500,000, or about twice the

17    value of the property involved in the transaction, or twice

18    the gross gain or loss, whichever is greater.

19                    And all of that could be followed by -- that

09:13   20    is, any term of confinement may still be followed by a term

21    of supervised release of up to three years.  In other words,

22    a term of confinement, release.  You would then be under

23    supervision of the court for up to a term of three years,

24    during which time the Court has the authority to send you

09:14   25    back to prison if you violate federal law -- state or

1    federal law, or violate a term or condition of the

2    supervised release terms that the Court would put in place.

3              And one of those might have to do with your

4    presence in the country.  That is, you may be deported from

09:14   5    the United States after you have completed any term of

6    confinement.  Whatever the arrangements might be with the

7    government -- once those arrangements are brought to my

8    attention, if any, and you are then completed with

9    confinement and any other arrangements, you may be deported.

09:14   10             Do you understand that, certainly, could be a

11   consequence of entering a plea of "guilty"?

12        THE DEFENDANT:  Yes, Your Honor.  I understand and

13   I am conscious of what's written there and what you are

14   explaining.

09:15   15        THE COURT:  Very good.

16             And there is a special assessment, in addition

17   to any fine that might be imposed, a court cost of $100.

18             Now, I'm also aware that, I believe, pursuant

19   to the plea agreement, there may be a forfeiture clause

09:15   20   that -- or a money judgment agreement between yourself and

21   the government, as well as some other arrangements that

22   you're aware of with the government in addition to the

23   statutory penalties that might be imposed.

24             Do you understand those to be in play in this

09:15   25   case?

1          MR. SCHWARTZ:  I think my client needs --

2          THE COURT:  Let me repeat it.

3          Do you understand that there very well -- as I

4   understand, a part of the plea agreement is that there may

09:16   5   be some forfeiture, monetary forfeiture, on your part as a

6   part of the plea agreement?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And that might be in addition to any

9   fine that the Court might impose.  Understood?

09:16   10          THE DEFENDANT:  Yes.

11          THE COURT:  And I think I said that there is a one-

12   hundred-dollar court cost.  I believe I said that as well.

13          You understand those might be assessments that

14   would made against you in addition to any other penalties?

09:16   15          THE DEFENDANT:  Yes, I understand, Your Honor.

16          THE COURT:  I am going to ask the --

17          How do you refer to yourself?  Are you an

18   AUSA?

19          MR. SANDERS:  I am a trial attorney, but I am happy

09:17   20   to go by any title.

21          THE COURT:  Whatever I call you, just call you

22   "Sanders".  Right?

23          MR. SANDERS:  That's fine.

24          THE COURT:  I am going to ask Mr. Sanders if he

09:17   25   would state for the record the factual basis underlying the

1    plea that you're entering, which I believe is part of your

2    plea agreement.  And I want you to listen carefully.  I

3    might have some questions.

4            Sir.

09:17   5        MR. SANDERS:  Your Honor, were this case to proceed

6    to trial the government would present evidence that would

7    prove beyond a reasonable doubt that, as to Count 1, at all

8    relevant times from at least 2001 through June, 2013, the

9    Defendant was employed by Petroleos de Venezuela S.A., known

09:17   10   by the acronym "PDVSA", which is Venezuela's state-owned and

11   controlled oil company or by wholly owned subsidiaries or

12   affiliates thereof, including its procurement subsidiary

13   Bariven.  PDVSA, together with its subsidiaries and

14   affiliates, were responsible for the exploration,

09:18   15   production, refining, transportation and trade in energy

16   resources in Venezuela and for providing funding for other

17   operations of the Venezuelan government.

18           The Defendant held a number of positions at

19   PDVSA and Bariven, ultimately being named in January of 2012

09:18   20   as the general manager of Bariven.  In that capacity

21   Defendant, among other duties, had the responsibility for

22   assembling and revising Bariven's weekly payment proposals

23   which set forth the debt that Bariven owed to its numerous

24   vendors and proposed payments in various amounts to

09:18   25   selective vendors, and those payments were ultimately

1    authorized by a senior executive at Bariven who is

2    identified in the indictment as "Official A".

3               From in or around January, 2012, through in or

4    around 2013, the Defendant entered into a conspiracy with a

09:18   5    group of then current and former high-level officials of

6    PDVSA or other agencies of the Venezuelan government,

7    including his co-defendants listed in the indictment (Luis

8    Carlos DeLeon-Perez, Nervis Gerardo Villalobos-Cardenas,

9    Alejandro Isturiz-Chiesa and Rafael Ernesto Reiter Munoz),

09:19  10    as well as "Official A" and others, to solicit PDVSA vendors

11    Roberto Enrique Rincon-Fernandez, known as "Roberto Rincon"

12    through this colloquy, and Abraham Jose Shiera Bastidas for

13    bribes and kickbacks in exchange for providing assistance to

14    Roberto Rincon and Shiera in connection with their PDVSA

09:19  15    business.

16               Roberto Rincon, who was at the time and is a

17    resident of the Southern District of Texas, was the owner of

18    a number of U.S.-based energy companies, including several

19    that are based in the Southern District of Texas which

09:19  20    supplied equipment and energy services to PDVSA.  Mr. Shiera

21    also owned a number of U.S.-based energy companies.  The two

22    of them worked together on PDVSA contracts and contract

23    bids.

24               Specifically, the group of then current and

09:19  25    former high-level officials, which is identified in the

1   indictment as "the management team", agreed to give Roberto

2   Rincon and Shiera's companies payment priority over other

3   PDVSA vendors, thus ensuring that Roberto Rincon and

4   Shiera's companies, including their U.S. companies, would,

09:20   5   at least, get a weekly payment on outstanding PDVSA

6   invoices, and they also agreed to provide their companies

7   with assistance in winning future PDVSA business.  In

8   exchange, Robert Rincon and Mr. Shiera paid bribes,

9   including by using wire transfers from, to or through

09:20   10   financial institutions in the United States, in the amount

11   of 10 percent of all payments Roberto Rincon and Shiera

12   received from PDVSA, including to an account in Switzerland,

13   for the benefit of the management team, including

14   Mr. DeLeon, Mr. Villalobos and "Official A".

09:20   15          As part of the bribery scheme the Defendant

16   and Mr. Isturiz were responsible for ensuring that Roberto

17   Rincon and Shiera's companies were included in Bariven's

18   weekly payment proposals and identified on the payment

19   proposals as a company that would receive payment propriety.

09:21   20          In addition, the Defendant and Mr. Isturiz

21   shared draft payment proposals before they were finalized

22   with Roberto Rincon and Mr. Shiera for their review.  In an

23   attempt to conceal the fact that he was sharing such

24   information, the Defendant used private e-mail accounts to

09:21   25   forward the payment proposals or save the proposals in the

1    draft folder of a private e-mail account and then shared the

2    password with Mr. Rincon and Mr. Shiera.

3             Often, after reviewing the payment proposals,

4    Mr. Rincon or Mr. Shiera would contact the Defendant or

09:21   5    Mr. Isturiz and request that their companies receive

6    additional payment for additional distribution of proposed

7    payments.

8             After Mr. Isturiz left Bariven at the end of

9    2012 the Defendant assumed primary responsibility for these

09:21   10   duties until he resigned as general manager of Bariven on or

11   about June of 2013.

12             In exchange for these official acts the

13   Defendant took -- Mr. Rincon and Mr. Shiera offered to pay

14   bribes directly to the Defendant roughly in the amount of an

09:22   15   additional one to two percent above what they were already

16   paying a management team.  The Defendant then agreed with

17   Mr. Rincon and Mr. Shiera to launder the proceeds of this

18   bribery scheme by engaging in financial transactions,

19   including transactions to, through or from bank accounts in

09:22   20   the United States, that were designed to conceal the nature,

21   source and ownership of the bribe proceeds.

22             For example, the Defendant was paid for

23   multiple bank accounts controlled by Mr. Rincon and

24   Mr. Shiera and, typically, those bank accounts came from

09:22   25   companies that were other than the companies -- excuse me --

1    that were awarded PDVSA contracts.  And in order to further

2    conceal the nature and ownership of the bribe proceeds the

3    Defendant directed Mr. Shiera to send bribe payments through

4    an account held in the name of Defendant's relatives or

09:22  5    accounts in the name of the companies owned by Defendant's

6    relatives.

7         He also received bribe payments into bank

8    accounts opened for his benefit in Switzerland.

9    Specifically, Mr. Shiera introduced the Defendant to an

09:22  10   individual identified in the indictment as "Swiss Banker 1"

11   who helped the Defendant open a bank account in Switzerland

12   into which Mr. Roberto Rincon sent a bribe payment.  In

13   total, Roberto Rincon sent at least $851,000 in bribes to

14   the Defendant, including two that were sent from an account

09:23  15   in the Southern District of Texas.  The Defendant received

16   at least $540,122.03 in bribes from Mr. Shiera.

17        And, finally, in addition, the Defendant also

18   admits as part of the factual basis that he solicited and

19   received bribes from other owners of energy companies based

09:23  20   here in the United States in exchange for his assistance in

21   helping those individuals and their company win bids with

22   PDVSA and obtain payment from PDVSA on outstanding invoices.

23   Specifically, he received $1,625,696 in bribes from an

24   individual identified in the indictment as

09:23  25   "Businessman 3", a lawful permanent resident and resident of

1   Florida, at least $729,000 from a pair of Florida-based

2   businessmen, and at least $645,963.86 in bribes from a

3   resident of the Southern District of Texas.

4              In total, the Defendant conspired with others

09:24  5   to launder at least $7,033,504.71 in proceeds from the

6   various bribery schemes in which he participated.

7              THE COURT:  All right.  Mr. Rincon, did you hear

8   that?

9              THE DEFENDANT:  Yes, sir.

09:24  10             THE COURT:  Are those facts true, as far as you

11  know?  I don't suggest that you know every detail.  I'm

12  asking as far as you know.

13             THE DEFENDANT:  Yes, Your Honor.  As far as I know,

14  they are true.

09:24  15             THE COURT:  And, of course, you have agreed to

16  those facts and they're set out in the plea agreement.  Do

17  you have a copy of it there present with you?

18                 Would you show him the document.

19                 Pages 10 through 16.  Correct?

09:25  20             THE DEFENDANT:  Correct.

21             THE COURT:  In addition to entering a plea of

22  "guilty" and entering into the plea agreement, it's my

23  understanding that you have also entered into -- or have

24  agreed to forfeit, to the extent that it may be in your

09:25  25  possession, any funds that you might have toward this

1    $7,033,504.71, that that's a part of your understanding of

2    the plea agreement here in court.  Correct?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  All right.  And for your benefit the

09:26    5    Court will be entering an order after the plea is entered

6    and taken to that effect, and that's why I needed to verify

7    that.

8                   Counsel, do you know of any reason why

9    Mr. Rincon should not enter a plea of "guilty" to the charge

09:26   10    of conspiracy to commit money laundering, a violation of

11    federal law?

12                   And by that I am asking whether or not you

13    have had sufficient opportunity to discuss the underlying

14    facts and the legal ramifications of going to trial versus

09:26   15    enter a plea of "guilty".

16                   Have you had sufficient opportunity to do

17    that?

18              MR. SCHWARTZ:  Yes, Your Honor.  We have met with

19    Mr. Rincon-Godoy for many, many, many -- and I will add one

09:27   20    more "many" -- hours.

21              THE COURT:  All right.

22              MR. SCHWARTZ:  We have reviewed all of the facts

23    with him.  We have gone through his personal records from

24    his computer and we have also gotten records from the

09:27   25    government.  We have shared the government records with

1    Mr. Rincon-Godoy and he's agreed to the numbers and the

2    information involved in those government records.

3              We have spoken to him regarding all of the

4    underlying facts of the case and he understands.  We have

09:27   5    reviewed the plea agreement with him, both in English which

6    he's fairly fluent in, and it's been read to him also in

7    Spanish so that he fully understands it.

8              We're satisfied  1) that he understands the

9    facts  2) that he is knowingly, willingly and intentionally

09:28   10    pleading guilty and  3) -- and this is going beyond your

11    question a bit -- that he feels his plea of guilt is taking

12    a weight off of him from having to live with the conduct

13    that he, because of his position, entered into.

14              THE COURT:  And, certainly, that is as it ought to

09:28   15    be.

16              So, I need to simply ask you, Mr. Rincon.

17    What your counsel says as being the pre-plea process, the

18    work that they and you have done to come to this point --

19    are you satisfied with the amount of time that you have

09:28   20    spent with them in coming to this point?

21              THE DEFENDANT:  Yes, Your Honor.  As a matter of

22    fact, from when I was in Spain, I went with them and I have

23    had ample opportunity to review all my data, compare it with

24    the data that the government gave us, and it has, even

09:29   25    though I am guilty and pleading guilty, kind of taken the

1   weight of the guilt off my shoulders by getting to this

2   point.

3          THE COURT:  Certainly.

4          MR. SCHWARTZ:  Just so we're clear, Judge:  In

09:30   5   addition to meeting in Spain, many of the hours that we have

6   met with Mr. Rincon have been here in the Southern District

7   of Texas.

8          THE COURT:  Yes.

9              And you would agree with your attorney,

09:30   10   Mr. Schwartz, that this is your own decision.  In other

11   words, you're not being threatened.  And maybe I should

12   expand this.

13             You have family?

14          THE DEFENDANT:  Yes, sir.

09:30   15          THE COURT:  You're not entering this plea of

16   "guilty" because someone is threatening some member of your

17   family and you're being coerced to enter this plea of

18   "guilty".  Correct?

19          THE DEFENDANT:  No, sir.

09:30   20          MR. SCHWARTZ:  Your Honor, I believe he means, "No,

21   no one is threatening," not "No, it's not correct."

22          THE COURT:  Yes.  I get that.

23          THE DEFENDANT:  No.  As a matter of fact, neither a

24   government or my lawyers or anyone has offered any threats

09:31   25   or anything.  On the other hand, we tried to put down what

1    reasonable doubt there is down on paper to get to this

2    point.

3          THE COURT:  Certainly.  Let me ask you, then.  To

4    the charge of conspiracy to commit money laundering, in

09:31   5    violation of Title 18, United States Code, Section 1956(h),

6    how do you plead to that charge?  Guilty or not guilty?

7          THE DEFENDANT:  Guilty, Your Honor.

8          THE COURT:  Now, you have indicated that you desire

9    to enter into and may have already signed off on documents

09:31   10   that are -- or agreements that are contained in what I am

11   referring to as a plea agreement between yourself and the

12   government.  Correct?

13         THE DEFENDANT:  Yes.  I did sign a pre-agreement, I

14   guess.

09:32   15         THE COURT:  Let me ask Mr. Sanders if he would

16   summarize the terms of that plea agreement.  Let's see if

17   this is the same document that you are referring to.

18         MR. PEARSON:  Certainly, Your Honor.  And we have

19   another copy that we would execute in front of Your Honor

09:32   20   this morning.

21             The substance of the plea agreement provides

22   that the Defendant agrees to plead "guilty" to Count 1 of

23   the indictment which charges the Defendant with conspiracy

24   to commit money laundering, in violation of 18 USC 1956(h);

09:32   25   that the United States will agree at sentencing not to

1    oppose the Defendant's anticipated request for a three-level

2    downward departure pursuant to United States Sentencing

3    Guidelines, Section 3E1.1, should the defendant accept

4    responsibility as contemplated by the guidelines.  This

09:32   5    agreement includes the district's standard appellate waiver

6    in which the Defendant waives all rights to appeal and

7    collateral attack, other than those provided for under 2255

8    for ineffective assistance of counsel.  And the Defendant

9    agrees to forfeit $7,033,504.71 by money judgment.  And,

09:33   10   finally, that if the Defendant persists in his plea through

11   sentencing the government will dismiss the remaining counts

12   of the indictment.

13          THE COURT:  All right.  Did you hear that,

14   Mr. Rincon?

09:33   15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  And just for the record this is a

17   multiple-count indictment and you're entering a plea of

18   guilty to a single count.  Correct?

19          THE DEFENDANT:  Yes, sir.

09:33   20          THE COURT:  And one other matter came to my

21   attention.

22              We have in this system of government a

23   sentencing guidelines scheme that Congress has enacted.  You

24   understand that the range of punishment is a determination

09:34   25   made by the Court within the total range that Congress might

1    have set.  In other words, when I was talking to you about

2    the penalty associated with this offense I believe I told

3    that the range of punishment was up to 20 years.  That is

4    the maximum.  And, of course, the Sentencing Guidelines may

09:34   5    have something to say about where Congress thinks you ought

6    to be sentenced.  Understood?

7            THE DEFENDANT:  Yes, I understand.

8            THE COURT:  And I am not bound by that, nor am I

9    bound by your lawyer or the government's persuasiveness,

09:34   10   even though they are permitted to seek to persuade me as to

11   what an appropriate sentence ought to be, as well as

12   yourself.  You understand?

13           THE DEFENDANT:  Yes.  I understand that the judge

14   is autonomous in his decision.

09:35   15           THE COURT:  Well, I don't know if it's quite that

16   way, but it sometimes seems to start out that way.  But you

17   recognize that it's a decision that I make and I appreciate

18   it.  Thank you, sir.

19           I am going to ask, then, that you take a look

09:35   20   at the document before you and make sure it's the document

21   you and your attorneys have discussed.  And if that is the

22   plea agreement that you're prepared to enter into, would you

23   sign it now or acknowledge your signature on the document

24   presented.

09:36   25           MR. SCHWARTZ:  Your Honor, the Defendant has looked

1    at the document and he's signed it a number of times before,

2    as I previously stated.  I am handing him a pen and he is

3    going to sign it on Page 20, and he's also going to sign it

4    on Page 21.

09:37    5              For the record, Your Honor, myself and

6    Mr. Yoss are signing on Page 22.

7              And there is an addendum to the plea agreement

8    which the Defendant is signing on Page 24.

9              THE COURT:  All right.

09:37   10              MR. SCHWARTZ:  And myself and Mr. Yoss are also

11   signing on Page 24.

12              With the Court's permission, I will add the

13   dates to the agreement when the plea is finished, if that's

14   all right with the Court.

09:37   15              THE COURT:  Let's make sure that Mr. Sanders also

16   executed the document or will be executing it, and then you

17   can add the dates to it and pass it to the clerk of court

18   who will take your client's acknowledgment.

19              Let's see.  Who's going to sign it?

09:38   20              MR. SANDERS:  Your Honor, both myself and

21   Mr. Pearson will be signing on behalf of the government.

22              THE COURT:  Very good.  Thank you, sir.

23              MR. SCHWARTZ:  For the record, Your Honor, we have

24   added the dates to Page 24 in addition to Mr. Sanders' and

09:39   25   Mr. Pearson's -- I'm sorry --

          1          THE COURT:  If you will pass it --

          2          MR. SANDERS:  Your Honor, I am passing that up to

          3   the courtroom deputy along with the order imposing the money

          4   judgment that Your Honor referenced earlier.

09:39     5          THE COURT:  Thank you, sir.

          6              We're verifying the signatures.  And after

          7   that, Mr. Rincon, I am going to ask you to raise your right

          8   hand again as soon as we get the go-ahead that the document

          9   has been appropriately executed.

09:39    10          CASE MANAGER:  Yes.

         11          THE COURT:  All right.  We'll take your

         12   acknowledgment, sir, from the clerk here of the court.

         13   Thank you.

         14          CASE MANAGER:  Have you read or has someone read to

09:39    15   you the plea agreement form that you have just signed?

         16          THE DEFENDANT:  Yes.

         17          CASE MANAGER:  Are the matters and things contained

         18   in the form true and correct to best of your knowledge?

         19          THE DEFENDANT:  Yes.

09:40    20          CASE MANAGER:  Have you signed it of your own free

         21   will?

         22          THE DEFENDANT:  Yes.  Yes, of my own free will.

         23          CASE MANAGER:  Thank you.

         24          THE COURT:  You may lower your hand, sir.

09:40    25              Based on your plea of "guilty" to the charge

1    of conspiracy to commit money laundering the Court makes the

2    following findings:  First, that you're mentally competent

3    to enter this plea of "guilty"; that a factual basis exists

4    for the indictment and, specifically, the charge for which

09:40  5    you're entering your plea of "guilty"; that you're entering

6    this plea of "guilty" freely and voluntarily; that is, you

7    understand the nature of the charge pending against you and

8    you understand the consequences, that is, the penalty and

9    punishment, associated with that plea.

09:40  10            Based on your plea of "guilty" the Court finds

11    you guilty as charged.

12            The Court is setting -- or resetting this case

13    for sentencing to July 9 at 10:00 a.m.

14            A presentence investigation report will be

09:41  15    prepared by the probation office.  They will want to

16    interview you; and, of course, subject to counsel and the

17    government's concerns, if any, about other charges or other

18    defendants, they will certainly want to interview you and

19    gather, at least, personal data.  I would ask that, to the

09:41  20    extent of your ability, cooperate with them in that process

21    so that it might be completed timely.

22            And assuming that all goes well, July 9 would

23    be a date where you will be sentenced.

24            You will be given an opportunity to speak to

09:41  25    the Court about your concerns about the sentence to be

1   imposed and, as well, your counsel and the government.  In

2   the event the date changes or the government and your

3   attorneys and yourself enter into other agreements, they

4   will notify the clerk of court and, certainly, you as well

09:42  5   and we'll proceed according to that schedule.

6         MR. SCHWARTZ:  Your Honor, if I might.  We

7   contemplate that the Defendant -- we have reached an

8   agreement as to bond with the government, and I think

9   subsequent to finishing with you we will be going before a

09:42  10   magistrate to ask that a bond be approved.

11         THE COURT:  I am aware of that, and my instructions

12   were that I want to take the plea and then we'll certainly

13   see that your client gets to -- I believe it's Judge Smith

14   who might be there this morning.  And whatever the

09:42  15   circumstances are that you may agree to it will not involve

16   me so that, if there is some unfavorable outcome, it would

17   be a matter that would be appealed to me.  So, I will not

18   participate in this process at this point.

19         MR. SCHWARTZ:  Correct.  The only reason I raise

09:42  20   that, Your Honor, is that one of the things that we have

21   discussed with the prosecutor -- of course, subject to

22   Judge Smith's approval -- is that the Defendant will be

23   residing, during the period of his bond prior to sentence,

24   in the Southern District of Florida.  So, I wonder if the

09:43  25   presentence report can be done by the probation department

1    in the Southern District of Florida --

2              THE COURT:  I think that's an arrangement that you

3    would need to make and discuss with probation and determine

4    what the dates are and go from there.

09:43   5              MR. SCHWARTZ:  Thank you, Your Honor.

6              THE COURT:  It's not a matter that I would have any

7    objection to, as to where and when that interview is done.

8              MR. SCHWARTZ:  Thank you, sir.

9              MR. SANDERS:  Your Honor, if I may.

09:43  10              THE COURT:  Yes, sir.

11              MR. SANDERS:  During Your Honor's colloquy with

12    regard to the Sixth Amendment, I may have missed it, and I

13    apologize if I did, but just for an abundance of caution,

14    whether Your Honor wanted to specifically point out for the

09:44  15    Defendant his rights under 11(b)(1)(E) to confront

16    witnesses, call witnesses, subpoena them and right to an

17    attorney, which, of course, he has --

18              THE COURT:  Certainly.  I perhaps -- I know I did

19    address, at least, some of that.  I generally do.

09:44  20              Under our federal constitution, the Sixth

21    Amendment certainly covers any number of things that are

22    available to you, part of which is the trial by jury of

23    twelve persons making a determination as to whether or not

24    the government has proved its case beyond a reasonable

09:44  25    doubt.  And, certainly, by going to trial you haven't waived

1    any rights under the Fifth Amendment.  So, you don't have to

2    testify and you don't have to call witnesses.  Certainly,

3    you have the right to cross-examine all of the government's

4    witnesses or any evidence that they -- and object to any

09:44    5    evidence they may present and obtain the Court's ruling in

6    that regard.  But that Sixth Amendment right is one that is

7    waived and all of whatever those other dimensions of it

8    might be when you enter a plea of "guilty".

9              I believe that is your understanding.  Is that

09:45    10    correct?

11              THE DEFENDANT:  Yes, Your Honor.  You mentioned

12    that I was waiving my right to have a trial with a jury and

13    all that.

14              THE COURT:  Well, thank you very much.

09:45    15              MR. SANDERS:  He was, obviously, listening better

16    than I was, Your Honor.

17              THE COURT:  And, obviously, he's talked to his

18    attorney as well about this.

19              MR. SCHWARTZ:  And we did discuss with him waiving

09:45    20    his right to confront witnesses against him and to call

21    witnesses on his behalf.

22              THE COURT:  Certainly.  July 9 at 10:00 a.m.

23              MR. SANDERS:  Your Honor, two final things.

24              One, we would ask that the plea agreement

09:45    25    itself or pursuant to this district's practice be kept under

```
 1   seal.
 2            THE COURT:  Oh, it will be, as well as the order --
 3            THE DEFENDANT:  Thank you.
 4            THE COURT:  -- imposing the money judgment will be
 5   under seal, at least until and unless there is some need to
 6   unseal it.
 7            MR. SANDERS:  I think, personally, the government
 8   doesn't feel the money judgment needs to be; so, that can be
 9   a matter of public record.
10            THE COURT:  All right.
11            MR. SANDERS:  And the government contemplates that
12   it's at least possible that we may need to adjourn the
13   sentencing again with the agreement of defense counsel.
14   Would you like us to, if should that be the case, make a
15   formal motion, just contact your --
16            THE COURT:  Yes.
17            MR. SANDERS:  Excellent.  We will do so.  Thank
18   you, Your Honor.
19            MR. SCHWARTZ:  Thank you, Your Honor.
20            THE COURT:  Thank you, gentlemen.  You may be
21   excused.
22                 We'll see you at a later time, Mr. Rincon.
23   Thank you, sir.
24            THE DEFENDANT:  Thank you, Your Honor.
25
```

09:45 (line 5)
09:46 (line 10)
09:46 (line 15)
09:46 (line 20)

1                     COURT REPORTER'S CERTIFICATE

2          I, BRUCE SLAVIN, certify that the foregoing is a

3     correct transcript from the record of proceedings in the

4     above entitled matter, to the best of my ability.

5

6                                   *s/Bruce Slavin*
                                   BRUCE SLAVIN, RPR, CMR
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25